**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| 77th STREET, an Arizona limited liability company, | |
| Plaintiff, | |
| v. | |
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a foreign corporation, | |
| Defendant. | Case No. 2:12-cv-01910-PHX-SLG |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Before the Court at Docket 105 is Defendant American Family Mutual Insurance Company's Motion for Partial Summary Judgment. Plaintiff 77th Street opposed at Docket 139, and American Family replied at Docket 144. The Court heard oral argument on the motion on March 20, 2014 in Phoenix, Arizona.[1] Having considered the documents filed with the Court, the applicable law, and the arguments of the parties, the Court will grant in part and deny in part the motion.

---

[1] *See* Docket 147 (Minute Entry).

## FACTUAL AND PROCEDURAL BACKGROUND

The facts, presented in the light most favorable to 77th Street for purposes of this summary judgment motion,[2] are as follows:

### I.   77th Street's Insurance Claim to American Family.

77th Street had a businessowners insurance policy from American Family that provided coverage for the building located at 15849 N 77th Street in Scottsdale, Arizona for the period from February 1, 2010 to February 1, 2011.[3]   On October 5, 2010, the building was damaged by a hail storm.[4]   77th Street promptly reported the damage to American Family.[5]   American Family assigned the claim to adjuster Randal Coleman. Mr. Coleman was directly employed by a group called Pacesetter, but he had worked on American Family claims, as well as other insurance company claims, for 21 years.[6]   Mr. Coleman received informal training from American Family "on an annual basis to keep . . . up-to-date with their policies and their . . . procedure[s]" for adjusting claims.[7]

Mr. Coleman prepared an estimate for the damage to the property dated October 21, 2010.   The estimate lists the total replacement cost value of the needed repairs as

---

[2] *See infra* Discussion Part II (explaining summary judgment standard).

[3] Docket 106-1 at 7 (Ex. 1 to Mot.: Insurance Policy).

[4] Docket 106-1 at 82 (Ex. 2 to Mot.: First Notice of Loss); Docket 140-1 at 2 ¶ 4 (Ex. A to Opp'n: Hartunian Decl.).

[5] *See* Docket 106-1 at 82 (Ex. 2 to Mot.: First Notice of Loss); Docket 140-1 at 2 ¶ 5 (Ex. A to Opp'n: Hartunian Decl.).   The First Notice of Loss describes the damage as follows: "Hail and Storm Damage to: Skylight (broke a hole), AC Units (hail damage to coils) Roof damage (hail scoured) Leak damage (hail damaged [window] caulking)."

[6] Docket 106-1 at 86–87 (Ex. 3 to Mot.: Coleman Dep.).

[7] Docket 140-5 at 4 (Ex. C to Opp'n: Coleman Dep.).

2:12-cv-01910-PHX-SLG, *77th Street v. American Family Mutual Insurance Co.*
Order Granting In Part and Denying in Part Motion for Partial Summary Judgment
Page 2 of 33

$33,634.11 and the total actual cash value as $25,768.69.[8]   The estimate did not identify any amount for General Contractor Overhead and Profit ("GCOP").[9]   The repairs comprising the overall estimate are roof repairs, window repairs, skylight repairs, and the replacement of eleven air conditioning coils.[10]   The estimated cost to replace the air conditioning coils was based on a quote from Donley Service Center,[11] 77th Street's HVAC contractor.[12]   Sometime after the estimate was prepared, American Family issued an actual cash value payment to 77th Street for approximately $25,000.[13]

On December 2, 2010, 77th Street's claim was reassigned to adjuster Melanie Labrie.[14]   Like Mr. Coleman, it appears Ms. Labrie was also directly employed by Pacesetter but received some training from American Family on how to adjust claims.[15]

---

[8] Docket 106-1 at 89 (Ex. 4 to Mot.: 10/21/10 Coleman Estimate).  The total actual cash value amount of $25,768.69 includes $11,418.54 for roofing repairs, $13,920.76 for electrical repairs, and $429.39 for skylight repairs.  Docket 106-1 at 91.

[9] *See* Docket 106-1 at 91–93 (Ex. 4 to Mot.: 10/21/10 Coleman Estimate); *cf.* Docket 140-9 at 34 (Ex. G to Opp'n: Netka Dep.) ("Overhead and profit per the direction of American Family was to be paid upon completion of the work, but it could be negotiated and agreed in advance.").

[10] Docket 106-1 at 92–93 (Ex. 4 to Mot.: 10/21/10 Coleman Estimate).  The replacement cost value for re-sealing the windows is listed as $0.00, with a note that says, "Item left open awaiting invoice for the re-sealing window on the back side of the building."  Docket 106-1 at 92.

[11] Docket 106-1 at 92 (Ex. 4 to Mot.: 10/21/10 Coleman Estimate).

[12] Docket 141 at 4 ¶ 10 (Pl.'s Resp. to Def.'s Statement of Facts).

[13] The Coleman estimate lists the total actual cash value settlement amount as $24,768.69, which is $25,768.69 less a $1,000 deductible.  Docket 106-1 at 89 (Ex. 4 to Mot.: 10/21/10 Coleman Estimate).  American Family later sent another check for $347.00 to compensate 77th Street for an incorrect accounting of sales tax in the Coleman estimate.  *See* Docket 140-6 at 4 (Ex. D to Opp'n: Adams Decl.); *see also* Docket 106-1 at 139 (Ex. 10 to Mot.: 8/3/2011 Estimate) (listing actual cash value of payments previously made as $25,115.96).

[14] Docket 106-1 at 97 (Ex. 5 to Mot.: Labrie Dep.).

[15] *See* Docket 140-10 at 6 (Ex. H to Opp'n: Labrie Dep.).  Ms. Labrie explained at deposition that she received biennial commercial certification from American Family.  In order to receive

2:12-cv-01910-PHX-SLG, *77th Street v. American Family Mutual Insurance Co.*
Order Granting In Part and Denying in Part Motion for Partial Summary Judgment
Page 3 of 33

Shortly thereafter, Ms. Labrie spoke with Kim Bourdeau,[16] who told Ms. Labrie that Ms. Bourdeau "needed to meet with [77th Street's] contractor, [who] had some issues on the estimate."[17]  Ms. Labrie called the contractor, Chris Lawlor, and arranged a meeting.[18]

On December 7, 2010, Ms. Labrie met with Mr. Lawlor at the 77th Street property.[19]  They walked around the property together, and according to Ms. Labrie, Mr. Lawlor "agreed with the scope of damages" identified in the original estimate prepared by Mr. Coleman, although it appears he disagreed with Mr. Coleman's estimate of the cost of certain repairs.[20]  In a letter dated December 10, 2010, American Family informed 77th Street that "[t]he adjuster did not find any additional storm related damage to [the] property," and therefore it was "unable to extend any additional coverage or payment."[21]

According to Dennis Hartunian, a member and owner of 77th Street, at some unspecified point, "77th [Street] notified American Family that it had obtained a new

---

the certification, she had to pass a test based on materials provided by American Family and complete a three- to five-day training conducted by American Family trainers at Pacesetter's training school.  Docket 140-10 at 6.

[16] American Family asserts that Ms. Bourdeau is "the office manager for the company that leases [77th Street's] building."  Docket 105 at 3 (Mot.).

[17] Docket 106-1 at 99 (Ex. 5 to Mot.: Labrie Dep.).

[18] Docket 106-1 at 99 (Ex. 5 to Mot.: Labrie Dep.).

[19] Docket 106-1 at 100 (Ex. 5 to Mot.: Labrie Dep.).

[20] *See* Docket 106-1 at 101–03 (Ex. 5 to Mot.: Labrie Dep.) ("He said we [had an agreed scope of damage].  He said he didn't have any issues with the other estimate, only pricing.").  Ms. Labrie testified at deposition that she gets paid more for a reinspection if she finds additional damage.  Because no additional damage was identified at the reinspection with Mr. Lawlor, she was paid a flat fee of $100.  Docket 140-10 at 4–5 (Ex. H to Opp'n: Labrie Dep.).

[21] Docket 106-1 at 105 (Ex. 6 to Mot.: 12/10/10 Letter from American Family to 77th Street).

2:12-cv-01910-PHX-SLG, *77th Street v. American Family Mutual Insurance Co.*
Order Granting In Part and Denying in Part Motion for Partial Summary Judgment
Page 4 of 33

roofing contractor because Lawlor was not a roofing contractor."[22]   On February 17, 2011, American Family received an estimate from ZZone Construction dated February 8, 2011, which lists what ZZone termed the "replacement cost value" of the needed repairs at $207,283.20, including approximately $32,000 for GCOP.[23]   It appears the ZZone estimate called for replacing the entire roof, while the original Coleman estimate had called for repairing only a limited portion of the roof.[24]

On February 24, 2011, adjuster Sean Netka took over responsibility for 77th Street's claim.[25]   At the time, Mr. Netka was directly employed by Onsite Claims & Appraisal, but he had received several weeks of training from American Family at their regional office in Minnesota.[26]

On March 3, 2011, Mr. Netka spoke with Brian Altaffer of ZZone Construction and Dennis Hartunian.[27]   According to Mr. Netka, Mr. Altaffer explained that in his opinion, the roof had sustained severe damage and the roofing system had been

---

[22] Docket 140-1 at 1–2 ¶¶ 1, 7 (Ex. A to Opp'n: Hartunian Decl.).  Mr. Hartunian's declaration spells his name "Harturian."  However, his deposition spells his name "Hartunian."  *See* Docket 106-1 at 183 (Ex. 19 to Mot.: Harturian Dep.).  Consistent with the deposition, the Court uses "Hartunian."

[23] Docket 106-1 at 114 (Ex. 7 to Mot.: 2/8/11 ZZone Estimate); Docket 141 at 6 ¶ 17 (Pl.'s Resp. to Def.'s Statement of Facts).

[24] *Compare* Docket 106-1 at 108 (Ex. 7 to Mot.: 2/8/11 ZZone Estimate), *with* Docket 106-1 at 92 (Ex. 4 to Mot.: 10/21/10 Coleman Estimate).  Also, the ZZone Estimate included GCOP.  Docket 106-1 at 114 (Ex. 7 to Mot.: 2/8/11 ZZone Estimate).

[25] Docket 106-1 at 117 (Ex. 8 to Mot.: Netka Dep.).

[26] Docket 140-9 at 3–5 (Ex. G to Opp'n: Netka Dep.).

[27] Docket 106-1 at 118 (Ex. 8 to Mot.: Netka Dep.); Docket 141 at 6 ¶ 19 (Pl.'s Resp. to Def.'s Statement of Facts).

2:12-cv-01910-PHX-SLG, *77th Street v. American Family Mutual Insurance Co.*
Order Granting In Part and Denying in Part Motion for Partial Summary Judgment
Page 5 of 33

compromised by the hail.[28]   Mr. Netka's supervisor instructed Mr. Netka to call an engineering firm that American Family had used in the past, Rimkus Consulting Group.[29]   That same day, Mr. Netka called Rimkus and spoke with Brian Moffitt about getting a structural engineering opinion on the extent of the damages to the roof.[30]   Mr. Moffitt is an architect, not an engineer.[31]

On March 11, 2014, Mr. Moffitt inspected the building.[32]   Rimkus provided American Family with a Report of Findings prepared by Mr. Moffitt dated April 4, 2011.[33]   The report concludes that "[t]he roofing at the Subject Property sustained hail damage," but "[t]he damage to impact sites can be repaired . . . without recoating the entire roof surface."[34]   Mr. Netka "relied heavily" on the Rimkus report because it "correlated with

---

[28] Docket 140-9 at 7 (Ex. G to Opp'n: Netka Dep.).

[29] Docket 106-1 at 118–20 (Ex. 8 to Mot.: Netka Dep.); Docket 140-9 at 8 (Ex. G to Opp'n: Netka Dep.).

[30] Docket 106-1 at 118 (Ex. 8 to Mot.: Netka Dep.).

[31] Docket 106-1 at 135 (Ex. 9 to Mot.: 4/4/11 Rimkus Report of Findings).

[32] Docket 106-1 at 135 (Ex. 9 to Mot.: 4/4/11 Rimkus Report of Findings).  It appears that as of the time of the inspection, Mr. Moffitt and/or someone else at Rimkus indicated that the Report of Findings would be delivered within ten working days.  Docket 140-9 at 12 (Ex. G to Opp'n: Netka Dep.).

[33] Docket 106-1 at 126, 135 (Ex. 9 to Mot.: 4/4/11 Rimkus Report of Findings). It appears that after receiving the report in early April, Mr. Netka requested clarification from Mr. Moffitt of the "feasibility of replacing the damaged roof-to-wall flashing."  Docket 140-9 at 15 (Ex. G to Opp'n: Netka Dep.).  77th Street asserts the final report was completed on April 20, 2011.  Docket 140 at 3 ¶ 27 (Pl.'s Statement of Facts).  However, there is no clear support for this date in the record.  *Cf.* Docket 140-9 at 15 (Ex. G to Opp'n: Netka Dep.) (asking Mr. Netka at deposition, "it's April 20th when we start talking about a signed and stamped engineering report").

[34] Docket 106-1 at 129 (Ex. 9 to Mot.: 4/4/11 Rimkus Report of Findings).

2:12-cv-01910-PHX-SLG, *77th Street v. American Family Mutual Insurance Co.*
Order Granting In Part and Denying in Part Motion for Partial Summary Judgment
Page 6 of 33

the prior opinions."[35]  It does not appear American Family made any additional payment to 77th Street at that time.[36]

Approximately three months later, a project manager at ZZone Construction sent a letter dated July 20, 2011 to American Family.[37]  The letter states: "After having received bids from Subcontractors, we will not be able to complete the repairs based upon the funds documented on the [original] insurance scope."  The letter requests an additional $56,697.02—including $2,535 to cover the increased cost of aluminum coating for the roof, an additional $36,216.61 to repair the air conditioning units (based on a bid by JR Perkins), and GCOP on both the original scope of work and the supplement in the amount of $14,477.14.[38]  It appears Mr. Netka received the letter from ZZone on August 3, 2011.[39]  That same day, American Family issued a supplemental payment in the amount of $2,388.18 to cover the increased cost of the

---

[35] Docket 106-1 at 121 (Ex. 8 to Mot.: Netka Dep.).

[36] At deposition, Mr. Netka testified: "[W]hen I initially read the engineer's report, I believed that there was going to be additional money due after reviewing the estimate.  Since I didn't issue an additional payment, it appears that the scope of the engineer's repair had already been included in the original estimate."  Docket 106-1 at 122 (Ex. 8 to Mot.: Netka Dep.).

[37] Docket 140-11 at 10 (Ex. I to Opp'n: 7/20/11 Letter from ZZone to American Family).

[38] Docket 140-11 at 10 (Ex. I to Opp'n: 7/20/11 Letter from ZZone to American Family).  The letter also requests $3,468.27 for taxes.  Docket 140-11 at 10.

[39] Docket 106-1 at 122–23 (Ex. 8 to Mot.: Netka Dep.).  In its response to American Family's Statement of Facts, 77th Street disputes that the letter was received on August 3.  *See* Docket 141 at 8 ¶ 25 (Pl.'s Resp. to Def.'s Statement of Facts) ("Undisputed that ZZone sent an estimate.  Disputed that it was received on August 3rd, in fact it was sent July 20th.").  This disputed fact is not material to the Court's decision.

2:12-cv-01910-PHX-SLG, *77th Street v. American Family Mutual Insurance Co.*
Order Granting In Part and Denying in Part Motion for Partial Summary Judgment
Page 7 of 33

roof coating.[40]   It does not appear American Family ever responded specifically to the request for GCOP.[41]

The following day, August 4, 2011, Mr. Netka "received an email from ZZone Construction and JR Perkins stating that the entire air conditioning units needed to be replaced, not just the damaged coils."[42]   On September 13, 2011, Mr. Netka called Donley Service Center to see whether it could still replace the air conditioning coils in accordance with its October 2010 quote.[43]   On September 16, 2011, Donley returned Mr. Netka's call and stated it could still replace the coils, but the cost had increased by $1,850.[44]   That same day, Mr. Netka "called Mr. Hartunian and explained that American Family would pay for the increased cost to replace the coils but would not pay to replace the entire air conditioning unit[s]."[45]   Approximately two and a half weeks later, on

---

[40] Docket 106-1 at 124 (Ex. 8 to Mot.: Netka Dep.); Docket 106-1 at 139 (Ex. 10 to Mot.: 8/3/2011 Estimate).

[41] *Cf.* Docket 140-9 at 34 (Ex. G to Opp'n: Netka Dep.) ("Overhead and profit per the direction of American Family was to be paid upon completion of the work, but it could be negotiated and agreed in advance.").

[42] Docket 106-1 at 147 ¶ 3 (Ex. 11 to Mot.: Netka Decl.).

[43] Docket 106-1 at 147 ¶ 4 (Ex. 11 to Mot.: Netka Decl.).

[44] Docket 106-1 at 147 ¶ 5 (Ex. 11 to Mot.: Netka Decl.).  Almost two years later, Carl Bartoli of Donley Service Center testified at deposition that replacement of the coils was an adequate repair for the air conditioning units.  Docket 106-1 at 159 (Ex. 13 to Mot.: Bartoli Dep.).  In its response to American Family's Statement of Facts, 77th Street states: "[T]here is a factual dispute [as] to whether American Family breached their duty of good faith and fair dealing by failing to replace the AC units."  Docket 141 at 10 ¶ 33 (Pl.'s Resp. to Def.'s Statement of Facts) (citing Docket 140-2 (Ex. B to Opp'n: Irmiter Decl.)).  However, the Irmiter declaration cited by 77th Street does not state that the air conditioning units needed to be replaced.  *See* Docket 140-2 at 1–7 (Ex. B to Opp'n: Irmiter Decl.).

[45] Docket 106-1 at 147 ¶ 6 (Ex. 11 to Mot.: Netka Decl.).

2:12-cv-01910-PHX-SLG, *77th Street v. American Family Mutual Insurance Co.*
Order Granting In Part and Denying in Part Motion for Partial Summary Judgment
Page 8 of 33

October 3, 2011, Mr. Netka issued a supplemental payment in the amount of $1,218.04 for the increased cost to repair the air conditioning coils.[46]

Shortly thereafter, 77th Street hired Haag Engineering to "examine[] three samples of roofing (cores)" from the building.[47]  Haag issued a report dated November 29, 2011, which concluded "[t]here was no hail-caused damage to the three roofing cores," and "[t]he features observed in the three cores were attributable to application, weathering, and/or mechanical effects."[48]

Also in November 2011, Mr. Hartunian, on behalf of 77th Street, entered into a "Construction/Estimation/Adjustment & Claim Assignment Agreement."[49]  Under the terms of the agreement, 77th Street assigned 20% of the proceeds from its insurance claim to Home Restorers, LLC and 80% of the proceeds to McBride Construction Company in exchange for their assistance with settling the insurance claim and performing restoration work, respectively.[50]  Home Restorers is an independent adjusting firm.[51]

---

[46] Docket 106-1 at 147 ¶ 7 (Ex. 11 to Mot.: Netka Decl.); Docket 106-1 at 150 (Ex. 12 to Mot.: 10/3/11 Estimate).

[47] See Docket 106-1 at 162 (Ex. 14 to Mot.: 11/29/11 Haag Engineering Report).  Haag's report does not indicate that 77th Street hired Haag; rather, American Family asserts this in its Statement of Facts.  See Docket 106 at 6 ¶ 34 (Def.'s Statement of Facts).  77th Street does not directly dispute this in its response.  See Docket 141 at 10 ¶ 34 (Pl.'s Resp. to Def.'s Statement of Facts) ("Plaintiff's Response: Objection Hearsay.  Undisputed that the report was to accomplish what it says.").

[48] Docket 106-1 at 165 (Ex. 14 to Mot.: 11/29/11 Haag Engineering Report).

[49] Docket 106-1 at 167–68 (Ex. 15 to Mot.: 11/8/11 Claim Assignment Agreement).

[50] Docket 106-1 at 167 (Ex. 15 to Mot.: 11/8/11 Claim Assignment Agreement).

[51] Docket 106-1 at 170 (Ex. 16 to Mot.: 1/24/12 Letter from Home Restorers to American Family).

2:12-cv-01910-PHX-SLG, *77th Street v. American Family Mutual Insurance Co.*
Order Granting In Part and Denying in Part Motion for Partial Summary Judgment
Page 9 of 33

On February 2, 2012, Mr. Netka received a letter of representation from Joe Hensley, a Home Restorers adjuster, dated January 24, 2012.[52]   The letter states: "Upon independent inspection of the insured premises, we have discovered that covered damage exists for which payment has not been received by [77th Street]."[53] The letter requests "a certified copy of the insured's policy, any settlement estimates prepared for this loss, copies of any and all payments issued under this claim, and copies of any and all correspondence related to this claim."[54]   On February 10, 2012, Mr. Netka told Mr. Hensley that "appraisal may be the best avenue to resolve the claim." Shortly thereafter, Mr. Netka emailed Mr. Hensley the information he had requested.[55]

On April 11, 2012, Mr. Netka received a Home Restorers estimate from Mr. Hensley dated April 4, 2012.[56]   The estimate lists what Home Restorers termed both the "replacement cost value" and "actual cash value" of the needed repairs—including replacement of the roof and air conditioning units and GCOP—at $303,667.62.[57]

---

[52] Docket 106-1 at 147 ¶ 8 (Ex. 11 to Mot.: Netka Decl.); Docket 106-1 at 170 (Ex. 16 to Mot.: 1/24/12 Letter from Home Restorers to American Family).

[53] Docket 106-1 at 170 (Ex. 16 to Mot.: 1/24/12 Letter from Home Restorers to American Family).

[54] Docket 106-1 at 170 (Ex. 16 to Mot.: 1/24/12 Letter from Home Restorers to American Family).

[55] Docket 106-1 at 147 ¶¶ 9–10 (Ex. 11 to Mot.: Netka Decl.).  Under the terms of the policy, in the event of a disagreement over the amount of a covered loss, "either [party] may make written demand for an appraisal of the loss."  Docket 106-1 at 28 (Ex. 1 to Mot.: Insurance Policy).

[56] Docket 106-1 at 147 ¶ 12 (Ex. 11 to Mot.: Netka Decl.); Docket 140-13 at 6 (Ex. K to Opp'n: 4/4/12 Home Restorers Estimate).

[57] Docket 140-13 at 2–6 (Ex. K to Opp'n: 4/4/12 Home Restorers Estimate).

2:12-cv-01910-PHX-SLG, *77th Street v. American Family Mutual Insurance Co.*
Order Granting In Part and Denying in Part Motion for Partial Summary Judgment
Page 10 of 33

On May 2, 2012, Mr. Netka sent a letter to Mr. Hensley again "recommend[ing] appraisal to remedy the disagreement on the amount of the loss."[58]  Mr. Netka attests that on May 10, 2012 he "received an email from Mr. Hensley stating that he would not agree to the appraisal process."[59]  Mr. Netka also attests he received no further communication from Mr. Hensley following this May 10 email.[60]  77th Street filed this lawsuit three months later, on August 8, 2012.[61]

## II.   Evidence Concerning American Family's Claims Management Practices.

In support of its opposition to American Family's summary judgment motion, 77th Street has submitted evidence designed to show that American Family acted unreasonably in handling 77th Street's claim.  First, 77th Street submitted a declaration of Dennis Hartunian.  In the declaration, Mr. Hartunian asserts that "American Family's handling of [77th Street's] claim was outcome oriented, aimed at making [77th Street's] claim the smallest possible," and that "American Family took a hostile approach to our authorized representatives on the claim."[62]  He also contends that "American Family

---

[58] Docket 106-1 at 147 ¶¶ 13–14 (Ex. 11 to Mot.: Netka Decl.).

[59] Docket 106-1 at 148 ¶ 15 (Ex. 11 to Mot.: Netka Decl.).  The email is not in the record.  In its response to American Family's Statement of Facts, 77th Street does not dispute "that this was Netka's testimony," but it claims the testimony is irrelevant and objects on hearsay grounds. Docket 141 at 12 ¶ 44 (Pl.'s Resp. to Def.'s Statement of Facts).  77th Street adds: "[N]o one at American Family ever demanded appraisal as was their right under the insurance policy. American Family could have demanded appraisal regardless of whether Mr. Hensley agreed or not."  Docket 141 at 12 ¶ 44 (Pl.'s Resp. to Def.'s Statement of Facts).  The Court need not resolve 77th Street's objections to this testimony, as the testimony is not material to the Court's determination of the summary judgment motion.

[60] Docket 106-1 at 148 ¶ 16 (Ex. 11 to Mot.: Netka Decl.).

[61] Docket 1-1 at 2–6 (Compl.).

[62] Docket 140-1 at 2–3 ¶¶ 8, 14 (Ex. A to Opp'n: Hartunian Decl.).

2:12-cv-01910-PHX-SLG, *77th Street v. American Family Mutual Insurance Co.*
Order Granting In Part and Denying in Part Motion for Partial Summary Judgment
Page 11 of 33

and Sean Netka continually delayed and refused to answer calls from me and my representatives" and did not provide direct answers to repeated requests for updates.[63] However, Mr. Hartunian's declaration does not identify or discuss any specific instances in which American Family failed to respond or responded belatedly or inadequately to 77th Street.

77th Street also submitted excerpts from an American Family training document entitled: "EXCEL Property Development."[64]  The EXCEL document discusses "powers," or tools, that may be used by claims adjusters in negotiations with insureds, including controlling the agenda, knowledge, waiting, and "The Power of the Checkbook (Money)."[65]  The section on "The Power of the Checkbook" states that this is "probably [an adjustor's] strongest power."[66]  This section also states: "Knowing that you control the amount of money that [a claimant] will receive and when he or she gets it is a very strong bargaining tool."[67]

The EXCEL document also contains a page with a picture of an alligator at the top that describes different "Closing Techniques" for adjusters to use with insureds.  The list includes the assumption close, the alternative close, closing on a small issue, the pressure close, the negotiated close, and the trial close.[68]   The section on the

---

[63] *See* Docket 140-1 at 3 ¶¶ 10–11 (Ex. A to Opp'n: Hartunian Decl.).

[64] *See* Docket 140-8 (Ex. F to Opp'n: EXCEL Document).

[65] Docket 140-8 at 1–3 (Ex. F to Opp'n: EXCEL Document).

[66] Docket 140-8 at 1 (Ex. F to Opp'n: EXCEL Document).

[67] Docket 140-8 at 1 (Ex. F to Opp'n: EXCEL Document).

[68] Docket 140-8 at 7 (Ex. F to Opp'n: EXCEL Document).

2:12-cv-01910-PHX-SLG, *77th Street v. American Family Mutual Insurance Co.*
Order Granting In Part and Denying in Part Motion for Partial Summary Judgment
Page 12 of 33

assumption close states: "By assuming that the customer has accepted the offer, you can remove the responsibility for decision making away from the customer."[69]   The section on the pressure close states: "[T]his tactic entails putting pressure on the customer with special offers or inducements that are available for accepting or penalties for not accepting the offer."[70]

77th Street also submitted a declaration and deposition excerpts from its expert, Kim Adams.[71]   Ms. Adams is an attorney licensed in Florida and a public adjuster licensed in Florida and Texas.[72]   In her declaration, Ms. Adams opines that "American Family failed in good faith to attempt to effectuate a fair and equitable settlement of 77th Street's claim when it became reasonably clear that there was a covered loss to the property."[73]   At her deposition, Ms. Adams was shown the EXCEL document and opined that in this case, American Family's adjusters had used both the "assumption close" and "pressure close" tactics.[74]

---

[69] Docket 140-8 at 7 (Ex. F to Opp'n: EXCEL Document); *cf.* Docket 140-12 at 3 (Ex. J to Opp'n: King Dep.) (American Family corporate representative testifying she does not approve of use of assumption close).

[70] Docket 140-8 at 7 (Ex. F to Opp'n: EXCEL Document).

[71] Docket 140-6 (Ex. D to Opp'n: Adams Decl.); Docket 140-7 (Ex. E to Opp'n: Adams Dep.).

[72] Docket 140-6 at 1 ¶ 2 (Ex. D to Opp'n: Adams Decl.).

[73] Docket 140-6 at 6–7 ¶ 13 (Ex. D to Opp'n: Adams Decl.).  *But see* Docket 106-1 at 208 (Ex. 23 to Mot.: Veitch Report) ("American Family investigated, handled, and adjusted plaintiffs' claim in a prompt, fair, and reasonable manner . . . .").

[74] Docket 140-7 at 3–7 (Ex. E to Opp'n: Adams Dep.).  For example, with respect to the pressure close, Ms. Adams opined that "there were a lot of indications [from American Family] that we're closing the file, we're closing the file.  That could be construed as a pressure tactic." Docket 140-7 at 6–7.  Regarding Ms. Adams's statement that American Family repeatedly indicated it was closing 77th Street's file, the Court did not see clear evidence in the record that American Family formally closed 77th Street's file at any time.  But the Court has considered

2:12-cv-01910-PHX-SLG, *77th Street v. American Family Mutual Insurance Co.*
Order Granting In Part and Denying in Part Motion for Partial Summary Judgment
Page 13 of 33

III.    **Current State of the Building.**

As of April 5, 2013, no repair work had been done on the building since the October 2010 hailstorm.[75]  In April 2013, the building had an estimated 10 to 12 leaks, at least one of which had gotten considerably larger since the storm.[76]  The parties agree that in the absence of repairs, the damage to the building's roof and air conditioning units "will continue to get progressively worse over time."[77]

IV.    **Procedural History.**

77th Street initiated this action in Maricopa County Superior Court in August 2012.[78]  The Complaint contains two counts: (1) breach of contract; and (2) breach of the duty of good faith and fair dealing.[79]  In September 2012, American Family removed the action to federal court on the basis of diversity of citizenship.[80]  Discovery closed on November 24, 2013.[81]  Trial is presently set to commence on October 6, 2014.[82]

---

this and other factual assertions by Ms. Adams insofar as they set out the basis for Ms. Adams's opinions.  *See* Fed. R. Evid. 703.

[75] Docket 106-1 at 181 (Ex. 18 to Mot.: Bourdeau Dep.).  77th Street asserts that American Family's failure to pay additional amounts "forced [it] to forego necessary repairs."  Docket 141 at 13–14 ¶¶ 46–50.

[76] Docket 106-1 at 179–81 (Ex. 18 to Mot.: Bourdeau Dep.) (stating kitchen leak had grown from a quarter size to approximately 12 to 14 inches)

[77] *See* Docket 106 at 8 ¶ 51 (Def.'s Statement of Facts) (citing Docket 106-1 at 184 (Ex. 19 to Mot.: Hartunian Dep.)); Docket 141 at 14 ¶ 51 (Pl.'s Resp. to Def.'s Statement of Facts).

[78] Docket 1-1 at 2–6 (Compl.).

[79] Docket 1-1 at 4–5 (Compl.).

[80] Docket 1 (Notice of Removal).

[81] *See* Docket 62 (Order to Extend Disc. & Dispositive Mots. Deadlines).  This deadline was extended into December solely to permit American Family to depose one additional witness. *See* Docket 90 (Minute Entry).  Also, since the close of discovery the Court has ruled on several motions in limine filed by American Family.

2:12-cv-01910-PHX-SLG, *77th Street v. American Family Mutual Insurance Co.*
Order Granting In Part and Denying in Part Motion for Partial Summary Judgment
Page 14 of 33

On January 17, 2014, American Family filed its motion for partial summary judgment.[83]   In the motion, American Family requests partial summary judgment on 77th Street's claims for breach of contract and breach of the duty of good faith and fair dealing, as well as 77th Street's request for punitive damages.[84]   It asserts that if summary judgment is granted in its favor on these issues, then "[t]he amount American Family owes plaintiff on the claim . . . [will be] the only issue remaining for trial."[85]   The motion has been fully briefed,[86] and oral argument has been held.[87]

## DISCUSSION

### I.   Jurisdiction.

The Court has jurisdiction over this diversity action pursuant to 28 U.S.C. § 1332.

### II.   Summary Judgment Standard.

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  "The moving party initially bears the

---

[82] Docket 118 (Minute Entry).

[83] Docket 105 (Mot.).

[84] Docket 105 at 15 (Mot.).

[85] Docket 105 at 15 (Mot.).  In its motion, American Family states that it "is not moving [for summary judgment] on claims regarding the scope of loss and cost of repairs."  Docket 105 at 8 n.1.  The parties have retained experts who disagree on the scope of repairs needed to remedy the damage caused by the hailstorm.  *Compare* Docket 106-1 at 188–202 (Ex. 21 to Mot.: 5/4/13 Klinger Group Property Damage Assessment Report) (report by American Family's expert), *with* Docket 140-2 (Ex. B to Opp'n: Irmiter Decl.) (declaration of 77th Street's expert).

[86] Docket 140 (Opp'n); Docket 144 (Reply).

[87] Docket 147 (Minute Entry).

2:12-cv-01910-PHX-SLG, *77th Street v. American Family Mutual Insurance Co.*
Order Granting In Part and Denying in Part Motion for Partial Summary Judgment
Page 15 of 33

burden of proving the absence of a genuine issue of material fact."[88]  In cases where the non-moving party bears the burden of proof at trial, the moving party "need only prove that there is an absence of evidence to support the non-moving party's case."[89]  If the moving party meets this burden, then the non-moving party must present specific evidence demonstrating the existence of a genuine issue for trial, i.e., "evidence from which a jury could reasonably render a verdict in the non-moving party's favor."[90]  The non-moving party may not rely on mere allegations or denials.[91]

When considering a motion for summary judgment, a court must accept as true all evidence presented by the non-moving party and draw "all justifiable inferences" in the non-moving party's favor.[92]  If the evidence provided by the non-moving party is "merely colorable" or "not significantly probative," summary judgment is appropriate.[93]

## III.   The Court will deny summary judgment on the breach of contract claim (Count 1 of the Complaint).

American Family seeks summary judgment on 77th Street's breach of contract claim.   It asserts that under the terms of the insurance policy, American Family's

---

[88] *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

[89] *Id.* (citing *Celotex*, 477 U.S. at 323).

[90] *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

[91] *Anderson*, 477 U.S. at 248.  The non-moving party may rely on any of the evidentiary materials listed in Rule 56(c).  *Celotex*, 477 U.S. at 324.  This includes depositions, documents, affidavits, stipulations, and discovery materials.  *See* Fed. R. Civ. P. 56(c)(1).

[92] *Anderson*, 477 U.S. at 255.

[93] *Id.* at 249–50.

2:12-cv-01910-PHX-SLG, *77th Street v. American Family Mutual Insurance Co.*
Order Granting In Part and Denying in Part Motion for Partial Summary Judgment
Page 16 of 33

obligation to pay 77th Street additional sums has not yet arisen.[94]   It cites to the following provision in the insurance policy:

> We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, provided you have complied with all of the terms of this policy, and
> (1) We have reached agreement with you on the amount of loss, or
> (2) An appraisal award has been made.[95]

American Family maintains that it has paid 77th Street the undisputed amount owed under the insurance policy.[96]   With respect to the additional amounts sought by 77th Street, American Family asserts that because there has been no agreement on the amount of the loss and no appraisal award, American Family has not breached the contract by failing to pay those additional sums.[97]   American Family acknowledges, however, that there is a factual dispute concerning the amount of the covered loss, and it does not seek summary judgment on this issue.[98]

In its opposition, 77th Street asserts that American Family is obligated under the terms of the insurance policy to pay for the damage to the building resulting from the hailstorm.[99]   It maintains that "American Family failed to pay for all the damage to the

---

[94] Docket 105 at 8 (Mot.).

[95] Docket 105 at 8 (Mot.) (quoting Docket 106-1 at 30 (Ex. 1 to Mot.: Insurance Policy)).  In this case, although Mr. Netka recommended appraisal to Mr. Hensley, it does not appear that either American Family or 77th Street made a written demand for appraisal.  *Cf. supra* note 55 (under policy either party may make written demand for appraisal).

[96] Docket 105 at 8–9 (Mot.).

[97] Docket 105 at 9 (Mot.).

[98] *See* Docket 105 at 8 n.1 (Mot.) ("American Family is not moving on claims regarding scope of loss and cost of repairs.").

[99] Docket 139 at 14 (Opp'n).

2:12-cv-01910-PHX-SLG, *77th Street v. American Family Mutual Insurance Co.*
Order Granting In Part and Denying in Part Motion for Partial Summary Judgment
Page 17 of 33

property," and that "[i]t should . . . be up to the jury to determine whether in fact American Family breached its contractual obligation to pay for all the damage."[100]

The provision that American Family quotes from the insurance policy appears to indicate that American Family's obligation to pay arises only when there has been an agreement on the amount of the loss or an appraisal.  And yet the insurance policy obligates American Family to compensate 77th Street for damage to the building that is covered under the policy.[101]  Given the parties' dispute as to the scope of the damage caused by the hailstorm and the amount of money necessary to repair that damage, the Court declines to grant summary judgment on the breach of contract claim.  Rather, the issue of whether American Family breached the insurance contract will be resolved at trial by the jury when it determines the amount of the covered loss or damages due, if any.[102]

---

[100] Docket 139 at 15 (Opp'n).

[101] See Docket 106-1 at 29 (Ex. 1 to Mot.: Insurance Policy) ("In the event of loss or damage covered by this policy[,] . . . [a]t our option, we will either (1) Pay the value of lost or damaged property; (2) Pay the cost of repairing or replacing the lost or damaged property; (3) Take all or any part of the property at an agreed or appraised value; or (4) Repair, rebuild or replace the property with other property of like kind and quality . . . .").

[102] American Family also asserts 77th Street "did not take reasonable steps to protect the property as required by the policy," and "any damages that occurred as a result of [77th Street's] neglect are not covered under the policy."  Docket 105 at 9–10 (Mot.); cf. Docket 106-1 at 26 (Ex. 1 to Mot.: Insurance Policy) ("We will not pay for loss or damage caused by or resulting from any of the following: . . . Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.").  American Family requests that its motion for partial summary judgment "be granted as to this issue."  Docket 105 at 10 (Mot.).  However, the extent to which any neglect may impact the amount of the covered loss is an issue best determined at trial.  Accordingly, the Court declines to grant partial summary judgment with respect to this issue.

2:12-cv-01910-PHX-SLG, 77th Street v. American Family Mutual Insurance Co.
Order Granting In Part and Denying in Part Motion for Partial Summary Judgment
Page 18 of 33

**IV.    The Court will grant summary judgment on the claim for breach of the duty of good faith and fair dealing (Count 2 of the Complaint).**

American Family seeks summary judgment on 77th Street's claim for breach of the duty of good faith and fair dealing.[103]   The Arizona Supreme Court has held that "one of the benefits that flow from the insurance contract is the insured's expectation that his insurance company will not wrongfully deprive him of the very security for which he bargained or expose him to the catastrophe from which he sought protection."[104] Thus, under Arizona law "there is a legal duty implied in an insurance contract that the insurance company must act in good faith in dealing with its insured on a claim."[105]   The insurance company must "immediately conduct an adequate investigation, act reasonably in evaluating the claim, and act promptly in paying a legitimate claim."[106]

"The tort of bad faith arises when [an] insurer 'intentionally denies, fails to process or pay a claim without a reasonable basis.'"[107]   To prove bad faith, a plaintiff must show: (1) the insurer unreasonably investigated, evaluated, or processed its claim (an objective test); and (2) the insurer either knew it was acting unreasonably or "act[ed] with such reckless disregard that such knowledge may be imputed to it (a subjective

---

[103] Docket 105 at 10 (Mot.).

[104] *Rawlings v. Apodaca*, 726 P.2d 565, 571 (Ariz. 1986).

[105] *Noble v. Nat'l Am. Life Ins. Co.*, 624 P.2d 866, 868 (Ariz. 1981); *see also Rawlings*, 726 P.2d at 570 ("[T]he insurance contract and the relationship it creates contain more than the company's bare promise to pay certain claims when forced to do so; implicit in the contract and the relationship is the insurer's obligation to play fairly with its insured.").

[106] *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 280 (Ariz. 2000).

[107] *Id.* (quoting *Noble*, 624 P.2d at 868).

2:12-cv-01910-PHX-SLG, *77th Street v. American Family Mutual Insurance Co.*
Order Granting In Part and Denying in Part Motion for Partial Summary Judgment
Page 19 of 33

test)."[108]  An insurer may challenge a claim it believes is "fairly debatable" without acting in bad faith, but only if the insurer acts reasonably in investigating, evaluating, and processing the claim.[109]  Ordinarily, an insurer's "belief in fair debatability 'is a question of fact to be determined by the jury.'"[110]  However, "if plaintiff offers no significant evidence that calls into question defendant's belief that the claim is debatable, [a] court may enter judgment as a matter of law."[111]

Here, American Family asserts it is entitled to summary judgment on 77th Street's bad faith claim because a reasonable jury could not find that American Family acted unreasonably with respect to the insurance claim or that it knew it was acting unreasonably.[112]  In its opposition, 77th Street asserts American Family's motion should be denied for three reasons: (1) "American Family's claims management practices create arbitrary goals for reduction in claims paid, and thus are bad faith"; (2) "American Family failed to adequately investigate and evaluate the claim"; and (3) American Family "delay[ed] . . . paying the General Contractor overhead and profit."[113]

---

[108] *Nardelli v. Metro. Grp. Prop. & Cas. Ins. Co.*, 277 P.3d 789, 794–95 (Ariz. Ct. App. 2012) (internal quotation marks omitted).

[109] *See Zilisch*, 995 P.2d at 279–80; *Rawlings*, 726 P.2d at 572.

[110] *Zilisch*, 995 P.2d at 279 (quoting *Sparks v. Republic Nat'l Life Ins. Co.*, 647 P.2d 1127, 1137 (Ariz. 1982)).

[111] *Montoya Lopez v. Allstate Ins. Co.*, 282 F. Supp. 2d 1095, 1100 (D. Ariz. 2003).

[112] *See* Docket 105 at 11–13 (Mot.).

[113] Docket 139 at 8 (Opp'n).

2:12-cv-01910-PHX-SLG, *77th Street v. American Family Mutual Insurance Co.*
Order Granting In Part and Denying in Part Motion for Partial Summary Judgment
Page 20 of 33

### A. 77th Street has not demonstrated a genuine issue for trial with respect to its bad faith claim.

i. *American Family's claims management practices.*

77th Street asserts "American Family's claim procedures and training material entitled 'Closing Techniques[]' . . . outline various techniques or tactics designed to compel the insured to accept lower claim payments" and the adjusters used these improper techniques "to sabotage 77th Street's claim."[114]   77th Street analogizes this case to *Zilisch v. State Farm Mutual Automobile Insurance Co.* and *Demetrulias v. Wal-Mart.*[115]

In *Zilisch*, plaintiff sued her automobile insurance company, State Farm, for bad faith related to its handling of plaintiff's underinsured motorist claim.[116]   At trial, plaintiff produced evidence "that State Farm engaged in a deliberate practice of underpaying claims nationwide.   The evidence suggested State Farm set arbitrary claim payment goals for its claims personnel in order to reach the company goal of having the most profitable claims service in the industry."[117]   Plaintiff's expert testified that the way State Farm handled plaintiff's claim "was consistent with the way it did business across the country."   The jury returned a verdict in favor of plaintiff, and State Farm appealed.[118] On appeal, the Arizona Supreme Court affirmed, holding "[t]here was sufficient evidence in this case from which a jury could find that State Farm acted unreasonably and knew

---

[114] Docket 139 at 8–9 (Opp'n).

[115] Docket 139 at 8–10 (Opp'n).

[116] *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 277–79 (Ariz. 2000).

[117] *Id.* at 279.

[118] *Id.*

2:12-cv-01910-PHX-SLG, *77th Street v. American Family Mutual Insurance Co.*
Order Granting In Part and Denying in Part Motion for Partial Summary Judgment
Page 21 of 33

it" with respect to its handling of plaintiff's claim.[119]   Among other evidence, the court pointed to evidence that "salaries and bonuses paid to claims representatives [at State Farm] were influenced by how much the representatives paid out on claims."[120]

In *Demetrulias*, plaintiff filed a workers compensation claim with her employer, Walmart, after sustaining an injury at work.[121]   Over the course of the next year, plaintiff made several visits to doctors for diagnosis and treatment, and there was a substantial amount of back and forth between plaintiff, her doctors, and Walmart's claims adjusters.[122]   Plaintiff sued Walmart for bad faith, and Walmart moved for summary judgment.[123]

In her opposition to the summary judgment motion, plaintiff produced evidence of Walmart's claims management practices and policies.[124]   Specifically, she demonstrated that Walmart claims supervisors "set monthly and annual goals to close workers compensation files," with a typical goal of "clos[ing] the same number of claims that are opened."   One of the supervisors who worked on plaintiff's claim "constantly kept his team informed on where they were in relation to [this] goal."   And on "Blitz Wednesday" toward the end of each month, extra effort was expended to close files.[125]

---

[119] *Id.* at 280.

[120] *Id.*

[121] *Demetrulias v. Wal-Mart Stores Inc.*, 917 F. Supp. 2d 993, 998 (D. Ariz. 2013).  In Arizona, Walmart self-insures for workers compensation.  *Id.*

[122] *See id.* at 998–1003.

[123] *Id.* at 1003.

[124] *Id.* at 1009.

[125] *Id.*

2:12-cv-01910-PHX-SLG, *77th Street v. American Family Mutual Insurance Co.*
Order Granting In Part and Denying in Part Motion for Partial Summary Judgment
Page 22 of 33

The court held that this evidence supported plaintiff's bad faith claim and, based on this and other evidence, denied summary judgment to Walmart.[126]

In its reply, American Family asserts that this case is distinguishable from *Zilisch* and *Demetrulias* because in this case, unlike *Zilisch* and *Demetrulias*, 77th Street has not shown any connection between the EXCEL document and American Family's handling of 77th Street's claim.[127]   American Family maintains that evidence of an insurance company's claims management practices cannot support a bad faith claim "unless there is evidence relating those practices to the claim at issue."[128]   The Court agrees.

To prove bad faith, a plaintiff must demonstrate that its insurer acted unreasonably with respect to the plaintiff's claim.[129]   Thus, a plaintiff cannot prove bad faith with evidence of an insurer's allegedly inappropriate claims management practices unless the plaintiff demonstrates that those practices were applied to the insurer's handling of the plaintiff's particular claim.[130]

---

[126] *Id.* at 1009–10.  For example, there was also evidence that Walmart intentionally delayed approving certain treatments for plaintiff's injury.  *Id.* at 1008.

[127] *See* Docket 144 at 4–8 (Reply).

[128] Docket 144 at 4 (Reply).

[129] *See supra* notes 107–08 and accompanying text.

[130] *See, e.g.*, *Taft v. Am. Family Mut. Ins. Co.*, No. CV-11-2599, 2013 WL 5498226, at *6 (D. Ariz. Oct. 1, 2013) ("'[I]nstitutional' bad faith is not a commonly recognized and accepted legal claim."); *Milhone v. Allstate Ins. Co.*, 289 F. Supp. 2d 1089, 1102 (D. Ariz. 2003) ("[B]ecause all of the above general allegations of bad faith, assuming they are true, did not affect the processing of Plaintiff's claim *in this case* the Court finds that a cause of action for bad faith cannot lie based on these allegations.  In other words, if Plaintiff was not personally damaged by the allegedly inappropriate practices, Plaintiff cannot base his claim on such practices.").

2:12-cv-01910-PHX-SLG, *77th Street v. American Family Mutual Insurance Co.*
Order Granting In Part and Denying in Part Motion for Partial Summary Judgment
Page 23 of 33

In its opposition, 77th Street asserts "Adjuster Coleman used the assumption close to inaccurately set the scope of the claim," and "Melanie Labr[i]e also used the alligator technique to trick 77th [S]treet to believe that the case lacked merit and was closed."[131]   However, the only support that 77th Street cites for these assertions is the declaration and deposition of its expert, Kim Adams.[132]

As American Family points out in its reply, "Ms. Adams'[s] conclusory opinions about the use of the 'pressure close' and the use of the 'assumption close' do not relate to the facts of this case."[133]   For there is no evidence in the record that the adjusters in this case attempted to settle 77th Street's claim by pressuring 77th Street with special offers or inducements or by making an offer and assuming 77th Street had accepted it.[134]   Additionally, although the record indicates that Mr. Coleman, Ms. Labrie, and Mr. Netka received some training from American Family, all three were independent adjusters, and there is no evidence that any of them were ever trained based on the EXCEL document.   To the contrary, American Family's corporate representative, Kim

---

[131] Docket 139 at 9 (Opp'n).

[132] *See* Docket 139 at 9–10 (Opp'n); Docket 140 at 2–6 ¶¶ 10, 13, 46, 51 (Pl.'s Separate Statement of Facts).  At oral argument, the Court asked 77th Street what evidence in the record indicates that the adjusters who worked on 77th Street's claim received the EXCEL training. 77th Street did not point to any evidence in particular, but rather asserted the EXCEL document influences the entire organization and reflects the way American Family does business.

[133] Docket 144 at 7 (Reply).

[134] *Cf. supra* notes 69–70 and accompanying text (EXCEL document's description of pressure close and assumption close techniques).

2:12-cv-01910-PHX-SLG, *77th Street v. American Family Mutual Insurance Co.*
Order Granting In Part and Denying in Part Motion for Partial Summary Judgment
Page 24 of 33

King, stated in a correction to her deposition, "I do not believe that the independent adjusters are trained with this material."[135]

American Family also correctly points out that in *Demetrulias*, the court held that plaintiff's expert's opinion on one particular policy did not create a genuine issue of material fact with respect to plaintiff's bad faith claim.[136]   There, plaintiff presented evidence that Walmart had a policy of "roundtabling" difficult claims.[137]   However, the only evidence plaintiff had that her claim was roundtabled was the opinion of her expert—an opinion controverted by other evidence in the record.[138]  The court ruled:

> [Plaintiff] offers nothing more than the fact that Walmart roundtables high dollar claims and that her expert thinks her claim would fit that description. Such speculation is insufficient to create a genuine issue of material fact in light of the clear testimony of [two claims adjusters who worked on plaintiff's case].   Accordingly, [plaintiff] cannot incorporate the roundtable policy into her bad faith claim.[139]

In this case, similar to the roundtabling in *Demetrulias*, the Court finds the EXCEL document and the testimony of Kim Adams are not evidence from which a reasonable jury could conclude that American Family acted unreasonably in its handling of 77th Street's claim.

---

[135] Docket 143-1 at 10 (Ex. 2 to Def.'s Resp. to Pl.'s Statement of Facts: King Dep. with Corrections).

[136] Docket 144 at 6 (Reply).

[137] *Demetrulias v. Wal-Mart Stores Inc.*, 917 F. Supp. 2d 993, 1009 (D. Ariz. 2013).

[138] *Id.* at 1009–10.

[139] *Id.* at 1010; *see also, e.g.,   Hoa v. State Farm Fire & Cas. Co.*, No. CV-12-631, 2014 WL 1152967, at *7 (D. Ariz. Mar. 14, 2014) (holding expert report did not preclude summary judgment because report "merely state[d] contrary opinions without factual predicates"); *Montoya Lopez v. Allstate Ins. Co.*, 282 F. Supp. 2d 1095, 1105 (D. Ariz. 2003) (holding expert opinion was not sufficient to show issue of fact because it was not supported by record); *Knoell v. Metro. Life Ins. Co.*, 163 F. Supp. 2d 1072, 1078 n.8 (D. Ariz. 2001) (same).

2:12-cv-01910-PHX-SLG, *77th Street v. American Family Mutual Insurance Co.*
Order Granting In Part and Denying in Part Motion for Partial Summary Judgment
Page 25 of 33

*ii. Investigation and evaluation of 77th Street's claim.*

77th Street next asserts that "American Family consistently used the improper closing techniques to unreasonably evaluate and investigate the claim, misrepresent the adequacy of its investigation, and force 77th [Street] through unnecessary hoops."[140] Here again, 77th Street relies on the testimony of Kim Adams and argues that American Family's adjusters used the allegedly improper techniques outlined in the EXCEL document in the course of handling 77th Street's claim.[141]

The record in this case indicates that following the hail storm on October 5, 2010, adjuster Randal Coleman promptly investigated 77th Street's claim, estimated the damage to the building, and issued an actual cash value payment based on that estimate. Two months later, at 77th Street's request, adjuster Melanie Labrie met with 77th Street's contractor, Chris Lawlor, who agreed with the scope of damage identified in the original estimate. Then, nearly two months later, in February 2011, 77th Street presented American Family with a ZZone estimate—which was approximately $175,000 more than the original estimate and encompassed a considerably larger scope of work. In response, American Family conducted further investigation of 77th Street's claim.

77th Street makes much of the fact that adjuster Sean Netka told 77th Street in March 2011 that American Family would send an engineer to inspect the damage, but instead retained an architect, Mr. Moffitt, for the purpose.[142]   However, 77th Street has

---

[140] Docket 139 at 10 (Opp'n).

[141] *See* Docket 139 at 10 (Opp'n).

[142] Docket 139 at 11 (Opp'n) ("American Family told 77th [Street] that it had hired an engineer to investigate the claim.  In contrast, the individual hired was not an engineer.  This is another example of the improper closing technique.  By misrepresenting Moffit[t]'s qualifications,

2:12-cv-01910-PHX-SLG, *77th Street v. American Family Mutual Insurance Co.*
Order Granting In Part and Denying in Part Motion for Partial Summary Judgment
Page 26 of 33

not provided any evidence that Mr. Moffitt was unqualified to perform the building inspection.[143]

77th Street also asserts Mr. Netka's investigation was inadequate because he took too long to reevaluate the claim after the Rimkus Report of Findings was issued and did not respond to calls from American Family.[144]   However, 77th Street cites no evidence to support these assertions.[145]   Rather, the evidence in the record demonstrates that each time American Family was presented with information that differed from its original estimate, it conducted additional investigation and attempted to reconcile the difference.

The evidence in the record—particularly the Rimkus Report of Findings and the Haag report—also demonstrates that the scope of damage in this case is "fairly debatable," and thus the fact that American Family paid 77th Street based on the scope of damage identified in its original estimate as opposed to the scope of damage identified in the ZZone and Home Restorers estimates is not evidence of bad faith.[146]

---

American Family created a false assumption about the reasonableness in hopes that the claim would be closed.  This is textbook bad faith." (citations omitted)).

[143] 77th Street also asserts that Mr. Moffitt failed to timely issue the Report of Findings.  Docket 139 at 11 (Opp'n).  And at oral argument, it asserted American Family recognized that the feasibility of patching the roof was in question.  However, there is no evidence that American Family unreasonably delayed the issuance of the report, and American Family's request for clarification of certain of the report's findings is not evidence of bad faith.

[144] Docket 139 at 11 (Opp'n).

[145] Dennis Hartunian states in his declaration that Mr. Netka was unresponsive to 77th Street's requests for updates; however, he does not detail any specific instances.  *See supra* Factual & Procedural Background Part II; *cf. supra* note 74.

[146] *See supra* note 109 and accompanying text (insurer may challenge claim that is "fairly debatable" so long as insurer acts reasonably in investigating, evaluating, and processing claim).  77th Street has offered no evidence that calls into question American Family's belief in

2:12-cv-01910-PHX-SLG, *77th Street v. American Family Mutual Insurance Co.*
Order Granting In Part and Denying in Part Motion for Partial Summary Judgment
Page 27 of 33

Accordingly, the Court finds that 77th Street has not presented evidence from which a reasonable jury could conclude that American Family acted unreasonably in its investigation and evaluation of 77th Street's claim.[147]

   iii.  *Failure to pay general contractor overhead and profit (GCOP).*

   Finally, 77th Street contends American Family violated its duty of good faith and fair dealing by failing to pay GCOP with its initial actual cash value payment and with its supplemental payments.[148]   77th Street cites to *Tritschler v. Allstate Insurance Co.*, a 2006 decision by the Arizona Court of Appeals.[149]

   In *Tritschler*, rain caused damage to portions of plaintiff's house.[150]   Plaintiff had a homeowners insurance policy with Allstate, which entitled plaintiff to receive a payment for the "actual cash value" of covered damage, as well as an additional payment to reimburse plaintiff for "cost in excess of actual cash value if [plaintiff] repair[s], rebuild[s] or replace[s] damaged . . . covered property within 180 days of the

---

the fair debatability of 77th Street's claim.  *See supra* notes 110–11 and accompanying text (summary judgment appropriate when plaintiff offers no significant evidence calling into question defendant's belief that claim is fairly debatable).

[147] *Cf. Hoa v. State Farm Fire & Cas. Co.*, No. CV-12-631, 2014 WL 1152967, at *7 (D. Ariz. Mar. 14, 2014) ("The Court finds that State Farm gave [plaintiff] additional consideration at each point in the investigation.  State Farm's additional consideration attempted to reconcile the differences between the roofing contractor's estimates and its own estimates.  [Plaintiff] has not argued material facts precluding summary judgment on this point.  No reasonable juror could conclude that despite the additional consideration given regarding the scope of loss, State Farm's decision to pay based on its own estimates was evidence of a bad faith failure to reconcile.").

[148] Docket 139 at 12–13 (Opp'n).

[149] Docket 139 at 12 (Opp'n).

[150] *Tritschler v. Allstate Ins. Co.*, 144 P.3d 519, 522 (Ariz. Ct. App. 2006).

2:12-cv-01910-PHX-SLG, *77th Street v. American Family Mutual Insurance Co.*
Order Granting In Part and Denying in Part Motion for Partial Summary Judgment
Page 28 of 33

actual cash value payment."[151]   The policy defined "actual cash value" as "the current cost to repair or replace covered property with new material of like kind and quality less a deduction for physical deterioration and depreciation, including obsolescence."[152]

Allstate paid plaintiff $11,568.45 to cover the estimated cost of the repairs to plaintiff's home.[153]   Allstate did not include GCOP in this payment, instead attaching a note that stated: "If you decide to use a general contractor, please submit signed contract or paid bill and [Allstate] will reimburse the contractor overhead and profit."[154] Several months later, an independent adjuster acting on plaintiff's behalf submitted a proof of loss and demand to Allstate for an additional $36,377, which included $7,967 for GCOP.   Allstate refused to pay GCOP, and plaintiff subsequently completed the repairs himself without a general contractor.[155]   At some point, plaintiff's independent adjuster asked Allstate's adjuster: "[H]ow does Allstate legally justify withholding [GCOP] from the insureds?"[156]   Allstate's adjuster passed this question on to his

---

[151] *Id.* at 524–26.

[152] *Id.* at 526–27.

[153] *Id.* at 522–23.  Allstate initially enlisted a contractor to perform the needed repairs, and the contractor estimated the total cost of the repairs at $44,417, which included GCOP.  However, after the contractor had completed some of the repairs, Plaintiff became dissatisfied with the quality of the contractor's work and decided to complete the repairs himself.  The $11,568.45 payment represented Allstate's estimate of the cost of the work not yet completed by the contractor, less GCOP.  *Id.*

[154] *Id.* at 523 (alteration in original).

[155] *Id.*

[156] *Id.* at 530 (first alteration in original).

2:12-cv-01910-PHX-SLG, *77th Street v. American Family Mutual Insurance Co.*
Order Granting In Part and Denying in Part Motion for Partial Summary Judgment
Page 29 of 33

supervisor, but neither the adjuster nor the supervisor obtained a legal opinion on the issue or responded to the inquiry.[157]

Plaintiff sued Allstate, alleging Allstate breached the insurance contract and committed bad faith by failing to pay GCOP.[158]   The trial court granted summary judgment to Allstate on both counts, and plaintiff appealed.[159]   The Arizona Court of Appeals reversed and remanded.[160]   The court stated:

> [U]nder this policy actual cash value in adjusting a property loss includes any cost that an insured would be reasonably likely to incur in repairing or replacing a covered loss, regardless of whether the insured intends to repair or replace the property. And, if the cost to repair or replace the damaged property would likely require the services of a general contractor, the contractor's overhead and profit fees should be included in determining actual cash value . . . .[161]

The court held that the trial court erred in granting summary judgment to Allstate on the breach of contract claim because a question of fact existed as to whether the repairs would likely have required the services of a general contractor.  And the court held that the trial court erred in granting summary judgment to Allstate on the bad faith claim because a jury could find that Allstate "knowingly acted unreasonably" toward plaintiff by failing to pay GCOP or obtain a legal opinion on the issue.[162]

---

[157] *Id.*

[158] *Id.* at 523.

[159] *Id.*

[160] *Id.* at 535.

[161] *Id.* at 529.

[162] *Id.* at 530.

2:12-cv-01910-PHX-SLG, *77th Street v. American Family Mutual Insurance Co.*
Order Granting In Part and Denying in Part Motion for Partial Summary Judgment
Page 30 of 33

Here, unlike in *Tritschler*, the insurance policy does not define actual cash value.[163]  And this Court need not determine for purposes of this motion whether, under the terms of the policy, 77th Street could be entitled to GCOP with the initial $25,000 payment and the supplemental payments.[164]

This case is to some degree similar to *Tritschler* in that, after American Family had issued its initial payment, ZZone Construction on behalf of 77th Street sent a letter to American Family that, among other items, included a request for GCOP on the original scope of work that American Family had approved.[165]  Although American Family promptly issued a supplemental payment to cover the increased cost of roof coating that was also requested in this letter, it does not appear American Family ever responded directly to the request for GCOP.  At the same time, it does not appear 77th Street followed up on the request for GCOP.  Rather, in its subsequent communications with American Family—including in an email sent the day after American Family issued the supplemental payment—77th Street expressed its disagreement with American Family's assessment of the scope of the damage.[166]

Taken as a whole, the limited evidence in the record regarding GCOP is insufficient to create a genuine issue of material fact from which a reasonable jury could

---

[163] Like in *Tritschler*, the parties also disagree as to whether a general contractor would be needed for the repairs contemplated in the original estimate.  *Cf. supra* note 8 (listing repairs comprising original estimate).

[164] *Cf. Didyoung v. Allstate Ins. Co.*, No. CV-12-348, 2013 WL 2896847, at *3 (D. Ariz. June 13, 2013) ("Arizona courts have not addressed the issue of how to define 'actual cash value' when it is not defined by the insurance contract.").

[165] *See* Docket 140-11 at 10 (Ex. I to Opp'n: 7/20/11 Letter from ZZone to American Family).

[166] *See supra* notes 42–61 and accompanying text.

2:12-cv-01910-PHX-SLG, *77th Street v. American Family Mutual Insurance Co.*
Order Granting In Part and Denying in Part Motion for Partial Summary Judgment
Page 31 of 33

find that American Family "knowingly acted unreasonably" toward 77th Street when it did not include GCOP in its payments to the insured.[167]

### B. Summary judgment is appropriate.

A reasonable jury could not find based on the evidence before the Court that American Family unreasonably investigated, evaluated, or processed 77th Street's claim and that it knew it was acting unreasonably or acted with such reckless disregard that such knowledge may be imputed to it.  Therefore, the court will grant summary judgment in favor of American Family on 77th Street's bad faith claim.

## V.   Request for Punitive Damages.

American Family also requests summary judgment on 77th Street's request for punitive damages.[168]  Under Arizona law, punitive damages are not recoverable for breach of contract unless there is an underlying tort, such as bad faith.[169]  Because the Court will grant summary judgment to American Family on 77th Street's bad faith claim,

---

[167] *Cf. Tritschler*, 144 P.3d at 530.

[168] Docket 105 at 13–14 (Mot.).  Under Arizona law, "[t]o recover punitive damages, the plaintiff must 'show something more than the conduct necessary to establish the tort' of bad faith." *Nardelli v. Metro. Grp. Prop. & Cas. Ins. Co.*, 277 P.3d 789, 801 (Ariz. Ct. App. 2012) (quoting *Thompson v. Better-Bilt Aluminum Prods. Co.*, 832 P.2d 203, 209 (Ariz. 1992)) (internal quotation marks omitted).  The plaintiff "must prove that defendant's evil hand was guided by an evil mind."  *Rawlings v. Apodaca*, 726 P.2d 565, 578 (Ariz. 1986).  Plaintiff may do so in one of two ways: by showing that "defendant intended to injure the plaintiff," or by showing that, "although not intending to cause injury, defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others."  *Id.*  "[T]he burden of proof for punitive damages is by clear and convincing evidence."  *Linthicum v. Nationwide Life Ins. Co.*, 723 P.2d 675, 681 (Ariz. 1986).

[169] *See Lerner v. Brettschneider*, 598 P.2d 515, 519 (Ariz. Ct. App. 1979).

2:12-cv-01910-PHX-SLG, *77th Street v. American Family Mutual Insurance Co.*
Order Granting In Part and Denying in Part Motion for Partial Summary Judgment
Page 32 of 33

it will also grant summary judgment to American Family on 77th Street's request for punitive damages.[170]

## CONCLUSION

For the foregoing reasons, American Family's Motion for Partial Summary Judgment at Docket 105 is GRANTED IN PART and DENIED IN PART as follows:

1. The motion is DENIED with respect to 77th Street's breach of contract claim (Count 1 of the Complaint).

2. The motion is GRANTED with respect to 77th Street's claim for breach of the duty of good faith and fair dealing (Count 2 of the Complaint).

3. The motion is GRANTED with respect to 77th Street's request for punitive damages.

DATED this 24th day of July, 2014.

/s/ Sharon L. Gleason
UNITED STATES DISTRICT JUDGE

---

[170] Cf. Hoa v. State Farm Fire & Cas. Co., No. CV-12-631, 2014 WL 1152967, at *8 (D. Ariz. Mar. 14, 2014) ("Under Arizona law, punitive damages cannot be awarded for breach of contract; rather, punitive damages are only available when an action sounds in tort. . . . In this case, because the bad faith tort claim will be dismissed, the underlying breach of contract claim will not support an award of punitive damages.  Therefore, the Court will grant State Farm's motion for summary judgment on [plaintiff's] claim for punitive damages.").

2:12-cv-01910-PHX-SLG, 77th Street v. American Family Mutual Insurance Co.
Order Granting In Part and Denying in Part Motion for Partial Summary Judgment
Page 33 of 33